IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BARRETT,

    Plaintiff,

v.      Civil No. 23-3417-BAH

QUEST DIAGNOSTICS, ET AL.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Christopher Barrett ("Plaintiff"), proceeding pro se, sued Quest Diagnostics Clinical Laboratories, Inc. ("Quest Diagnostics" or "Quest"), Taylor Ingram ("T. Ingram"), Dr. Patrick Ingram ("Dr. Ingram"), Jake Ingram ("J. Ingram"), and Joshua Matize (collectively "Defendants") alleging violations of federal drug testing regulations, Title VI of the Civil Rights Act of 1964, and the Health Insurance Portability and Accountability Act ("HIPAA"). ECF 1 (complaint). Plaintiff also filed two supplements to his complaint, ECFs 3, 4. Pending before the Court is Defendant Quest Diagnostics' motion to dismiss. ECF 13. Plaintiff filed an opposition, ECF 20, and Quest filed a reply, ECF 21. Plaintiff has filed additional correspondence, ECF 22, which Quest has moved to strike as an impermissible surreply, ECF 23. All filings include memoranda of law, and Plaintiff's Complaint and Quest's Motion contain exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

the reasons stated below, Defendant Quest's motion to dismiss is **GRANTED** and Defendant Quest's motion to strike Plaintiff's correspondence is **DENIED** as moot.

I. **BACKGROUND**

This action arises out of a drug screening test conducted pursuant to Department of Transportation ("DOT") regulations. Plaintiff received an offer of employment as a Class A line haul driver, which was conditioned on passing a background check and drug screening. ECF 1, at 8. On October 12, 2023, he arrived at the laboratory facility located at 4601 Benson Avenue in Halethorpe, Maryland for a drug screening. *Id.* Plaintiff informed the front desk attendant, identified by Plaintiff as Defendant T. Ingram, that Plaintiff was there for a pre-employment screening and verified that the test was ordered by his prospective employer. *Id.* Before undergoing the test, Plaintiff asked T. Ingram if he could use the hand sanitizer outside the bathroom and was told by T. Ingram that he could do so. *Id.* T. Ingram explained the test collection procedures to Plaintiff, and Plaintiff followed T. Ingram's instructions. *Id.*

Upon completion of the test, T. Ingram informed Plaintiff that he would have to submit another sample. ECF 1, at 9. T. Ingram explained that federal DOT tests required "two separate sample specimen collections," an assertion which Plaintiff challenged, as he had "never been asked to produce two separate samples" when testing for his previous employment. *Id.* A dispute followed, and T. Ingram told Plaintiff that he had to take a second test or he would be "mark[ed] [] down as a refusal." *Id.* Plaintiff reports that he understood "a refusal . . . would result in a positive test, which would cause [him] to [lose] [his] current job," and so agreed to take a second test. *Id.*

Plaintiff waited nearly an hour to be able to take the test again. ECF 1, at 11. During this time, he observed "three other DOT test patients come and go," including "an older white male who . . . had been given a random [test] through his current employer," as well as a "younger

2

[H]ispanic male who was taking a DOT drug test" for pre-employment purposes, and an African American man "who was directed to take an observed" test from his employer. *Id.* at 10. According to Plaintiff, none of the other patients submitted multiple samples despite being "under the same federal DOT testing guidelines." *Id.*

After an hour had elapsed, Plaintiff asked T. Ingram if he could return another day, as Plaintiff had to go pick his daughter up from school. ECF 1, at 11. T. Ingram informed Plaintiff that he could not leave, or else he would be "marked down as a refusal to test." *Id.* When Plaintiff noted that he was ready to test again, T. Ingram summoned Dr. Ingram to monitor Plaintiff's collection. *Id.* During this second test, Plaintiff told Dr. Ingram that he did not know why he had been asked to retest and indicated that he felt uncomfortable and "belittl[ed]" by having to undergo an observed collection. *Id.* Plaintiff alleges he felt so "uncomfortable" that he could not finish the test. *Id.* He told T. Ingram he could not spend any more time in the facility as he was very late to pick up his daughter from school, and she responded that it would be "fine" but that she would "have to report to DOT that [Plaintiff] had refused" to take the test. *Id.* Plaintiff alleges that he told T. Ingram, "ok," and left to pick up his daughter. *Id.* When Plaintiff arrived at his daughter's school, his daughter's teacher told him that "it was not a good look" leaving his daughter at school so late. *Id.* Plaintiff reported being "embarrassed and distraught" by this incident at the school. *Id.*

The next day, Plaintiff contacted Quest Diagnostics' main customer service line to file a HIPAA complaint. ECF 1, at 12. Plaintiff also called the testing location directly and spoke to a "male" receptionist. *Id.* Plaintiff informed the receptionist of his belief that his HIPAA rights were violated "on the premises of making [him] consent to a fraudulent test." *Id.* The receptionist then informed Plaintiff that his patient file indicated that he had been asked to retest because the

3

sample "smelled like rubbing alcohol." *Id.* Plaintiff responded that he had not "adulterated" the sample and had only used hand sanitizer beforehand, though the receptionist contended that the hand sanitizer would not have had an effect on the sample. *Id.* Plaintiff was told that his sample was sent to "the laboratory" and that it would take "3 days to confirm test results and send the results to the employer who requested the test[.]" *Id.* at 13.

On October 17, 2023 Plaintiff's prospective employer received his "negative unadulterated drug screening results and gave [him] a start date" of October 30. ECF 1, at 13. Afterwards, Plaintiff continued to pursue his HIPAA complaint through Quest Diagnostics' internal channels. According to Plaintiff, he spoke to a customer service representative from Quest who suggested that a HIPAA violation might have occurred. *Id.* He also filed a complaint with the Office for Civil Rights at the Department of Health and Human Services and received in response a "determination letter" that stated Quest might have been "[non-compliant] with the [f]ederal discrimination laws based on the facts presented." *Id.* at 14. In December of 2023, Plaintiff went to the "Benson Avenue [Q]uest diagnostic and learned that only two males work in that office, [Dr.] Ingram and [] Matize." *Id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, Civ. No. 08-0231, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III. ANALYSIS

### A. Title VI Claims

The one claim Plaintiff specifically enumerates alleges a violation of Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d et seq. "and its implementing regulation at 45 CFR part 80." ECF 1, at 4. Title VI provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI itself directly reach[es] only instances of intentional

discrimination," as opposed to disparate impact practices. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).

In order to survive a motion to dismiss under Title VI, therefore, "a plaintiff must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant *intentionally discriminated* against plaintiff on the basis of race, color, or national origin." *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 355 (D. Md. 2022) (quoting *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 21-CV-01637-PX, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021)) (emphasis added). In other words, a plaintiff must "allege some facts to support that the defendant's 'alleged misconduct was motivated by race.'" *Id.* at 355 (quoting *Evans*, 2021 WL 5326463, at *4). These facts must amount to more than mere assertions that "unfavorable treatment was on account of 'discriminatory animus.'" *Evans*, 2021 WL 5326463, at *4.

Though Plaintiff's complaint does not specifically allege that the lab receives federal funding, Defendant Quest does not challenge that aspect of Plaintiff's claim in its Motion. *See* ECF 13-1, at 6. In his response to the Motion, Plaintiff argues that "Quest [D]iagnostic[s] is the recipient of federal funds" in the amount of several million dollars from multiple federal agencies, as well as grants from federal statutory programs like the CARES Act and through Medicare and Medicaid funding.[2] ECF 20, at 25. Other courts have found that a laboratory's acceptance of Medicare or Medicaid constitutes "a program or activity receiving Federal financial assistance" for the purposes of federal anti-discrimination law. *Dorer v. Quest Diagnostics, Inc.*, 20 F. Supp. 2d 898, 899–900 (D. Md. 1998); *see also Awah v. Mansfield Kaseman Health Clinic*, No. 21-CV-

---

[2] Though Plaintiff does not provide these facts in his complaint, the Court will, in keeping with its duty to liberally construe pro se claims, exercise its discretion to consider additional facts alleged in Plaintiff's response, as such facts relate to claims already established in the complaint. *See Johnson v. United Parcel Serv., Inc.*, Civ. No. JKB-19-1916, 2020 WL 231379, at *4 (D. Md. Jan. 15, 2020).

6

00938-PX, 2021 WL 6197415, at *5 (D. Md. Dec. 30, 2021) ("So long as the plaintiff plausibly avers that he had been the victim of intentional discrimination at a medical facility that receives federal funds, the claim survives challenge."). The Court will thus assume satisfaction of the first criterion in the test for evaluating claims under Title VI.

However, viewing the pleadings in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged facts sufficient to support a conclusion that Defendants intentionally discriminated against him on the basis of Plaintiff's race. From the face of the complaint, the Court can determine only a few pled facts that might touch on a Title VI claim. Principal among them is Plaintiff's indication that "[t]he only [other] observed test was [administered] to [an] [A]frican [A]merican male," while a white patient and a Hispanic patient did not undergo observed tests. ECF 1, at 10.[3] Plaintiff seems to imply that this seemingly disparate treatment of African American patients compared to patients of other racial backgrounds indicates discriminatory animus on the part of the lab site employees. However, this observation cannot support Plaintiff's intentional discrimination claim, as Plaintiff's complaint actually provides the reason the other African American man at the site underwent observed testing: this other patient had been "directed to take" an observed test "from his employer." *Id.* Plaintiff's complaint itself therefore undercuts the presumption that the employees of the testing site intentionally and consistently discriminated against African American patients, as it makes clear that the other African American individual present took an observed test at the behest of his employer, not at the discretion of the site

---

[3] Plaintiff fails to explicitly allege his race in the complaint. However, he notes in his response that the "only *other* African American [he saw] in the office was *also* subject[ed] to an observed urine collection[.]" ECF 20, at 24 (emphasis added). Thus, the Court will analyze his Title VI claim as one alleging racial discrimination. *See Carroll v. Porter*, Civ. No. GLR-23-02960, 2024 WL 3275482, at *8 (D. Md. July 2, 2024) (determining that "courts have authority to consider newly alleged facts in a response to a motion to dismiss" where the plaintiff is pro se).

employees. The discriminatory intent that Plaintiff asks the Court to infer based on this observation "is not plausible in light of the 'obvious alternative explanation,'" which Plaintiff himself provides—namely, that the other African American patient took an observed test at the directive of his employer rather than the laboratory staff. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 682).

In his response, Plaintiff alleges additional facts that relate to his Title VI claim. He contends that, in addition to his observation that only he and another African American man had to undergo monitored testing, the staff at the testing site "were noticeabl[y] more personable with the [C]aucasian and [H]ispanic DOT drivers, engaging in small talk and cheerful greetings." ECF 20, at 25. In contrast, Plaintiff attests that he and the other African American patient were met with a "generic greeting." *Id.* He also indicates that the testing site "did not employ" any African American staff members, "only two [H]ispanic individuals and the rest [C]aucasian." *Id.* Plaintiff suggests that this conduct amounts to a "mosaic of intentional discrimination," but even if the Court were to consider these allegations,[4] they fail to establish a plausible claim of intentional discrimination. *See Taite v. Express Primary Care, LLC*, Civ. No. MJM-24-327, 2024 WL 3200614, at *5 (D. Md. June 27, 2024) (finding that evidence of "discourteous behavior" toward a plaintiff, even where the plaintiff noted that white patients were not "subjected to the same deleterious treatment," amounted to a "conclusory allegation[] . . . insufficient to show that the disparate treatment was plausibly based on race."); *McCrea v. Johns Hopkins Univs.*, Civ. No.

---

[4] In keeping with its duty to construe pro se pleadings liberally, the Court will consider these claims despite their appearance only in Plaintiff's response and their absence in his complaint. *See Carroll*, 2024 WL 3275482, at *8; *see also Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 615 (E.D. Va. 2010) (holding that the "leeway" afforded pro se plaintiffs permits courts to "consider the allegations" made in a plaintiff's response to a motion to dismiss.).

8

JKB-15-0579, 2016 WL 6166999, at *7 (D. Md. Oct. 24, 2016) (finding that a Title VI claim was not viable where one of plaintiff's only bases for "believing she was discriminated against [was] that there were few African Americans in her program . . . ."). Apart from these inferential observations, Plaintiff offers no other factual evidence that would suggest he was subjected to intentional discrimination on the basis of his race. The Court acknowledges that the testing experience was not pleasant for Plaintiff, but his complaint nonetheless fails to allege sufficient facts to connect the discomfort he experienced with an intent to discriminate against Plaintiff on the basis of his race, thus his Title VI claim must be dismissed.[5]

### B. HIPAA Claims

Though Plaintiff's complaint only specifically enumerates Title VI as a cause of action, *see* ECF 1, at 4, his recitation of the facts indicates that he sought to bring a HIPAA violation claim against Defendants, *see id.* at 13. Defendant Quest construes Plaintiff's complaint as including a claim under HIPAA and argues that no private right of action exists under the statute. ECF 13, at 5. In his response in opposition to the Motion, Plaintiff acknowledges that he intends to bring a claim under HIPAA. ECF 20, at 8. In accordance with its liberal construction obligations, the Court thus reads Plaintiff's complaint as alleging a claim under HIPAA.

"HIPAA provides that '[a] person who knowingly . . . discloses individually identifiable health information to another person' without authorization shall be fined, imprisoned, or both." *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (quoting 42 U.S.C. § 1320d-6(a)(3), (b)). In keeping with other circuits around the country, the Fourth Circuit determined that "HIPAA does

---

[5] Plaintiff's response vaguely asserts that Defendants violated Plaintiff's rights under the "5th Amendment" to the United States Constitution. ECF 20, at 23. However, the Court has thoroughly reviewed the complaint and finds that Plaintiff failed to allege a constitutional violation, instead alleging only violations of Title VII and HIPAA, *see* ECF 1, at 4, 12, and later submitting, among other documents, copies of DOT regulations, *see* ECF 3; ECF 5.

not expressly allow for a private cause of action but delegates enforcement authority to the Secretary of the Department of Health and Human Services, reflecting Congress's intent to forgo creating a private remedy." *Id.* (citing *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020)); *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *United States v. Streich,* 560 F.3d 926, 935 (9th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006); *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596–97 (6th Cir. 2019)). Finding "no reason to chart a different course from our sister circuits," the Fourth Circuit unambiguously held that there is "no private right of action under HIPAA." *Id.* As such, Plaintiff cannot bring a private suit under HIPAA, and any such claim must be dismissed. *See, e.g., Dunbar v. Biedlingmaier*, Civ. No. DKC 20-0738, 2021 WL 3129310, at *3 (D. Md. July 23, 2021) ("Given that HIPAA does not allow for private enforcement, Plaintiffs' HIPAA claims in Count V must be dismissed."); *Cruse v. Esianor*, Civ. No. TDC-23-3064, 2024 WL 3276396, at *3 (D. Md. July 2, 2024) (dismissing a HIPAA claim "because there is no private right of action under HIPAA"); *Little v. Del Toro*, Civ. No. RDB-18-3983, 2020 WL 682901, at *3 (D. Md. Feb. 11, 2020) (noting "there is no private right of action for HIPAA violations.").

C.     **Testing Procedure Claims**

Plaintiff's complaint further implies that he seeks to bring suit pursuant to DOT regulations concerning drug testing procedures, 49 C.F.R. § 40.1 et seq. *See* ECF 1, at 5. However, as with an alleged HIPAA violation, "no private right of action exists for a violation of the Department of Transportation's drug testing regulations." *Johnson v. Sarles,* No. 13-CV-3509-RWT, 2014 WL 4628562, at *3 (D. Md. Sept. 12, 2014) (citing *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1042 (N.D. Ohio 1998)); *Shirley v. S.C. Fam. Ct.*, Civ. No. 9:10-2632-CWH-RSC, 2010 WL 5390123, at *3 (D.S.C. Nov. 30, 2010), report and recommendation adopted, No. CIV.A. 9:10-

2632-CWH, 2010 WL 5387606 (D.S.C. Dec. 22, 2010) ("However, this Court does not believe that the DOT federal regulations pertaining to drug testing provide for a direct private right of action to Plaintiff."); *Griffin-Ware v. Los Angeles Metro. Transportation Auth.*, No. 214CV04493SVWMAN, 2015 WL 12830380, at *2 (C.D. Cal. Apr. 29, 2015) (collecting cases). To the extent that Plaintiff seeks to base his claims on the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), 49 U.S.C. § 31306, that statute also explicitly precludes suit by private plaintiffs.[6] *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (holding that FOTETA "does not evince a concern for the protection of drivers who believe that they have been aggrieved through the drug testing process" and so does not provide a private right of action for those drivers); *McDowell v. J.B. Hunt Transp., Inc.*, Civ. No. 03 C 6590, 2004 WL 1878334, at *4 (N.D. Ill. Aug. 10, 2004) (collecting cases and observing that "[p]rior cases analyzing FOTETA and regulations promulgated thereunder have uniformly found that the statute does not expressly or impliedly create a private right of action.").

In his response brief, Plaintiff contends for the first time that he has a right of action under state tort law for redress of the alleged violations of DOT procedure. ECF 20, at 11 (arguing a "[p]rivate right under Maryland [t]ort [l]aw exists pertaining [to] DOT drug testing"). Specifically, he claims that the method by which he was induced to undergo a second test constitutes "misrepresentation, fraud, conspiracy, and negligence" under Maryland state law. ECF 20, at 15–23. However, "a memorandum in opposition to a motion is not a proper vehicle for amending a complaint or adding new claims[.]" *Moise v. Howard Cnty. Det. Ctr.*, Civ. No. RDB-18-1355, 2019 WL 454101, at *4 (D. Md. Feb. 4, 2019), *aff'd*, 807 F. App'x 272 (4th Cir. 2020) (citing,

---

[6] 49 C.F.R. § 40.1 *et seq.* was promulgated under FOTETA. *See Guy v. Spader Freight Servs.*, No. 14-CV-119, 2014 WL 2986930, at *4 (N.D. Ohio July 2, 2014).

*inter alia, Cutrera v. Board of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113–14 (5th Cir. 2005); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017)).[7] Because Plaintiff raises the state tort claims for the first time in his response to Quest's Motion, the claims may not proceed and are dismissed.[8]

### D. Liability of Quest Diagnostics

Quest asserts that it is not the proper defendant in this action, as it was not the entity that collected Plaintiff's sample and required him to submit to observed testing. ECF 13, at 4.[9] Plaintiff counters that the relationship between Quest and the lab site and the lab's employees "may be considered [] as [a] Principal-Agent relationship" and therefore Quest is still liable for the claims he brings. ECF 20, at 3.[10] Plaintiff appears to be arguing that the testing site had actual or apparent authority to act on behalf of Quest Diagnostics and thus Quest is a proper defendant in

---

[7] As noted, courts do have discretion to consider additional *facts* alleged in response to a motion to dismiss, especially when a plaintiff is pro se. *See Johnson*, 2020 WL 231379, at *4 (citing *Higgs v. Airframe Modification Prof'l Mechs., Inc.*, Civ. No. JKB-10-2379, 2011 WL 1637637, at *2 (D. Md. Apr. 29, 2011)). However, this discretion does not extend to entirely new causes of action not alleged in the complaint. *Cf. Rush v. Am. Home Mortg., Inc.*, No. WMN-07-CV-0854, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009) (determining that the court will consider additional facts "to the extent that the additional facts support [plaintiff's] existing claims.").

[8] Even if the Court were to consider these claims as somehow encompassed by the allegations in Plaintiff's complaint, each are explicitly raised under Maryland law. *See* ECF 20, at 15–23. Since Plaintiff does not allege diversity jurisdiction and the Court has "dismissed all claims over which it has original jurisdiction," the Court declines to exercise supplemental jurisdiction over any state law causes of action. 28 U.S.C. § 1367(c)(3).

[9] Plaintiff's complaint notes that the testing site address was 4601 Benson Avenue in Halethorpe. ECF 1, at 8. Quest asks the Court to take judicial notice of the fact that the site at that address is "DOT Exam Express Inc.," which, according to Quest, is "a separate and distinct legal entity [that] is not owned by or affiliated with Quest Diagnostics." ECF 13-1, at 4.

[10] Plaintiff also filed additional correspondence and attachments in support of his argument that lab site where he submitted his urine sample, DOT Express, is related to Defendant Quest. ECF 22, at 1-7. Given that the Court does not need to reach the issue of agency since all counts against Quest are dismissed, Quest's motion to strike these additional documents is denied as moot.

12

this action. ECF 20, at 4. Specifically, Plaintiff argues that a customer of the lab site might "reasonably believe" that the site was acting on behalf of Quest not only because the site used Quest software and Quest-labeled forms but also because patients at the site received verification texts from Quest, were greeted with "an illuminated Quest Diagnostics sign" in the window, and viewed "Federal Custody forms that are signed with Quest Diagnostics['] trade mark headed at the top[.]" *Id.* at 5.

The Court need not decide whether Plaintiff has made a sufficient "prima facie showing" that the Benson Avenue lab was an agent of Quest. *See Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 343 (D. Md. 2022). "[W]ithout the existence of an agent's underlying liability," no liability attaches to the principal. *Elliott v. Maryland Corr. Training Ctr.*, Civ. No. CCB-20-2963, 2022 WL 814294, at *3 (D. Md. Mar. 17, 2022). Where a "complaint fails to state a claim . . . upon which relief can be granted," there is no "viable claim," and thus no viable theory of either liability for the agent or vicarious liability for the principal. *Id.* Dismissal is required even if Plaintiff establishes that the lab was acting under Quest's authority because Plaintiff has failed to establish a viable claim against the lab itself or any of its staff members.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Quest Diagnostics' motion to dismiss is GRANTED while its motion to strike is DENIED as moot. In addition, and pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B), which obligates courts to dismiss cases where it determines the action "fails to state a claim on which relief may be granted," the Court exercises its discretion to *sua sponte* dismiss the claims against the remaining Defendants, none of whom are represented by counsel. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("Where a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it.") (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357

(2d ed. 1990)). Because Plaintiff does not assert any claims against the individual Defendants that are not also asserted against Quest, the Court will dismiss the complaint against the remaining Defendants for the same reasons as set forth above. *See Wallace v. Trost*, Civ. No. DKC-13-3473, 2014 WL 4388389, at *5 (D. Md. Sept. 4, 2014).

A separate implementing Order will issue.

Dated: February 3, 2025                                             /s/
                                                                    Brendan A. Hurson
                                                                    United States District Judge